CHARLES E. CONLEY AND WIFE, ANNA M. CONLEY, CHARLES W. CONLEY AND WIFE, REGINA M. CONLEY, ROBERT D. CONLEY AND WIFE, PATRICIA A. CONLEY, WILLIAM V. CONLEY AND WIFE, JANET L. CONLEY, KATHERINE M. CONLEY, BRIAN Z. TAYLOR, GUARDIAN AD LITEM FOR STEPHANIE A. CONLEY, JAMES M. AYERS, II, GUARDIAN AD LITEM FOR MICHAEL W. CONLEY, PLAINTIFFS V. EMERALD ISLE REALTY, INC., HENRY B. INGRAM, JR., AND WIFE, LUCY G. INGRAM, KATHERINE J. INGRAM, ANNE M. INGRAM, HENRY B. INGRAM, III, ELIZABETH L. INGRAM, DEFENDANTS

No. COA97-1388

(Filed 21 July 1998)

## 1. Landlord and Tenant— implied warranty of suitability— rented beach cottage

Summary judgment was not appropriately granted for the owners of a beach cottage in a negligence action filed by renters injured when the deck collapsed. The forecast of evidence could support a conclusion that defendants leased a furnished vacation home to plaintiffs for a short period of time; that the vacation home was not suitable or habitable for tenant occupancy; and that the defendants breached their warranty of suitability. The North Carolina Residential Rental Agreements Act does not apply to the facts of this case; however, a landlord who leases a furnished residence for a short period impliedly warrants that the furnished premises will be initially suitable for tenant occupancy.

## 2. Landlord and Tenant— rental agency—liability for collapsed deck

Summary judgment for the rental agency of a vacation home was improperly granted in a negligence action arising from a collapsed deck where there was evidence raising a genuine issue of fact as to the extent of the agency's duty to maintain and repair the vacation home. Whether the agent has a duty to maintain and repair the premises is a matter of contract or agreement between the agent and the owner.

## 3. Landlord and Tenant— vacation home—collapsed deck— liability to family members not on lease

In an action arising from the collapse of a deck at a beach cottage, family members of the tenants staying at the vacation home with permission from the tenants were entitled to the protection of the implied warranty of suitability.

Appeal by plaintiffs from order filed 19 August 1997 by Judge Judson D. DeRamus, Jr. in Carteret County Superior Court. Heard in the Court of Appeals 20 May 1998.

*Sumrell, Sugg, Carmichael & Ashton, P.A., by Rudolph A. Ashton, III, and Scott C. Hart, for plaintiffs appellants.*

*Dunn, Dunn, Stoller & Pittman, LLP, by David A. Stoller and Andrew D. Jones, for defendant appellee Emerald Isle Realty, Inc.*

*Mason & Mason, P.A., by L. Patten Mason, for defendants appellees Ingram.*

GREENE, Judge.

William V. Conley and wife, Janet L. Conley (William and Janet Conley); Michael W. Conley, by his guardian ad litem, James M. Ayers, II; Charles E. Conley and wife, Anna M. Conley; Charles W. Conley and wife, Regina M. Conley; Robert D. Conley and wife, Patricia A. Conley; Katherine M. Conley; and Stephanie A. Conley, by her guardian ad litem, Brian Z. Taylor (the Conley family) (collectively, plaintiffs) appeal from the granting of summary judgment in favor of Emerald Isle Realty, Inc. (Emerald Isle); Henry B. Ingram, Jr. and wife, Lucy G. Ingram; Katherine J. Ingram; Anne M. Ingram; Henry B. Ingram, III; and Elizabeth L. Ingram (the Ingrams) (collectively, defendants).

Emerald Isle, in the business of selling and leasing beach cottages, contracted with the Ingrams to lease the furnished cottage owned by the Ingrams. On 22 January 1994, William and Janet Conley made reservations with Emerald Isle to stay at the Ingrams' cottage from 24 July 1994 to 7 August 1994. Emerald Isle sent a letter to William and Janet Conley confirming the reservation of the cottage and requesting payment. The letter detailed that the cottage would house up to fifteen people. William and Janet Conley paid Emerald Isle the deposit and balance for rental of the Ingrams' beach cottage. On 30 July 1994, the plaintiffs were standing on the second story sound-side deck of the cottage when it collapsed; the plaintiffs suffered severe bodily injuries as a result.

Mark Wax (Wax), the president of Emerald Isle, testified that his company had a contract with the Ingrams for the rental of their cottage which addressed the specific obligation of Emerald Isle to maintain and repair the cottage. Neither party, however, presented that

contract into evidence. Wax did testify that Emerald Isle provided "maintenance and housekeeping" for the cottage but "the extent to which [Emerald Isle] provide[d] maintenance and housekeeping depend[ed] on [Emerald Isle's] relationship and agreements with the owners." Michael Rogers (Rogers), Maintenance Director for Emerald Isle, met with the Ingrams once or twice each year to discuss any maintenance needs. Rogers' duties also included receiving and addressing complaints from renters checking in and out of the cottage. Rogers had inspected and repaired an ocean-side deck on the Ingram cottage prior to the plaintiffs' stay, but had not made the same inspection of the sound-side deck.

George R. Barbour, a professional engineer, testified that the sound-side deck collapsed because of corroded nails and the absence of lag bolts.

The plaintiffs' complaint alleges that the defendants were negligent in failing to inspect and repair the sound-side deck on the Ingrams' cottage and that the injuries they sustained were the proximate cause of this negligent conduct. The plaintiffs further allege that the defendants agreed to provide a "safe and habitable location for the plaintiffs to stay" and that the defendants breached that agreement.

_____

The issues are whether: (I) the owner of a furnished vacation home who rents it for a two-week period of time impliedly warrants that it is suitable for occupancy; (II) the rental agency that rents a furnished vacation home on behalf of the owner for a two-week period of time impliedly warrants that it is suitable for occupancy; and (III) such an implied warranty of suitability, if it exists, extends to the guest(s) of a tenant who rents a furnished vacation home for a two-week period.

I

[1] The Ingrams argue that their relationship with the plaintiffs is one of landlord and tenant. Relying on *Robinson v. Thomas*, 244 N.C. 732, 736, 94 S.E.2d 911, 914 (1956), the Ingrams therefore contend that they have no liability unless there is a showing that at the time of the letting of the premises they had knowledge of the dangerous defect in the premises that caused the plaintiffs' injuries. The plaintiffs argue that they were invitees of the Ingrams, and as such, the Ingrams were required, pursuant to *Rappaport v. Days Inn*, 296 N.C. 382, 383, 250 S.E.2d 245, 247 (1979), "to exercise due care to keep

[the] premises in a reasonably safe condition and to warn [the plaintiffs] of any hidden peril."

Neither party contends that the North Carolina Residential Rental Agreements Act (the Act), codified at N.C. Gen. Stat. ch. 42, art. 5, applies to the facts of this case; and we agree that it does not. The Act, which requires that the landlord "keep the premises in a fit and habitable condition," N.C.G.S. § 42-42(a)(2) (Supp. 1997), applies only to a dwelling unit used as a tenant's "primary residence," N.C.G.S. § 42-40(2) (1994). In this case, there is no dispute that the vacation home was not the plaintiffs' primary residence.

Although our courts have not addressed the specific issue raised in this case,[1] other courts have held that a landlord-tenant relationship does exist when a tenant rents a furnished residence for a short period of time. *See* 5 *Thompson on Real Property* § 40.23(a)(2)(i) (David A. Thomas ed., 1994) (hereinafter 5 *Thompson on Real Property*); *Horton v. Marston*, 225 N.E.2d 311 (Mass. 1967) (holding that landlord impliedly covenanted that furnished summer cottage was suitable for its intended use); *Presson v. Mountain States Properties, Inc.*, 501 P.2d 17, 19 (Ariz. 1972) ("In residential short-term lease situations, we believe the duty of due care is owed to a tenant . . . to maintain premises free from 'unreasonably dangerous' instrumentalities that could potentially cause injury."). In recognizing this landlord-tenant relationship, however, these courts have rejected the common law rule absolving the landlord from all liability for unknown dangerous defects in the premises. *Id.* Instead, these courts hold that the landlord who leases a furnished residence for a short period "impliedly warrants that the furnished premises will be initially suitable for tenant occupancy." 5 *Thompson on Real Property* § 40.23(a)(2)(i). We agree with this exception to the common law rule. Indeed, it would be unreasonable to hold that a short-term[2]

---

1. The defendants argue that this Court has previously addressed the exact situation presented in this appeal and cite *Sawyer v. Shackleford*, 8 N.C. App. 631, 175 S.E.2d 305 (1970), as their authority. We disagree. It is true that the *Sawyer* case involved a claim by a weekend tenant of a beach cottage who allegedly was injured while walking down negligently designed stairs. The trial court concluded that a landlord-tenant relationship existed but dismissed the case due to the tenant's contributory negligence. On appeal, this Court affirmed the dismissal on the ground that the finding of contributory negligence was "adequately supported" by the evidence in the case. It does not appear that the issue of the relationship between the tenant and the owner was before this Court. We therefore do not read *Sawyer* as binding authority on the issues presented in this case.

2. The ultimate test for determining whether the term of the lease is "short" is whether "the lease is made for a temporary purpose." 5 *Thompson on Real Property*

lessor of a furnished vacation home "does not impliedly agree that what he is letting is a house suitable for [occupancy] in its condition at the time." *Horton*, 225 N.E.2d at 312. "An important part of what the [tenant] pays for is the opportunity to enjoy [the vacation home] without delay, and without the expense of preparing it for use." *Id.*

In this case, the plaintiffs rented a furnished vacation home for two weeks. The plaintiffs were injured when the sound-side deck of the vacation home collapsed as they were standing on it. There is evidence in the record that the deck fell because of corroded nails and the absence of lag bolts. This forecast of evidence could support a conclusion that the Ingrams leased a furnished vacation home to William and Janet Conley for a short period of time; that the vacation home was not suitable[3] or habitable for tenant occupancy; and thus that the Ingrams breached their implied warranty of suitability. A breach of this implied warranty of suitability (habitability) is "evidence of negligence." *Brooks v. Francis*, 57 N.C. App. 556, 559, 291 S.E.2d 889, 891 (1982). Accordingly, summary judgment for the Ingrams was not appropriate.

## II

**[2]** Emerald Isle argues that summary judgment in its favor was nonetheless proper because Emerald Isle "was simply the rental agent for the Ingrams" and that it therefore had "no duty to the tenants to maintain or repair the premises." We agree that an agent in the business of renting furnished vacation homes for a short period of time does not necessarily have the duty to maintain and/or repair the premises.[4] Whether the agent has such a duty is a matter of contract or agreement between the agent and the owner of the vacation home. *See Cassell v. Collins*, 344 N.C. 160, 163-64, 472 S.E.2d 770, 772 (1996). In this case, although the contract between Emerald Isle and

---

§ 40.23(a)(2)(i). A short term has been described as one for "a few days, or a few weeks or months." *Ingalls v. Hobbs*, 31 N.E. 286, 286 (Mass. 1892).

3. The Act requires landlords to provide premises that are "fit and habitable." N.C.G.S. § 42-42(a)(2). Although the Act is not applicable in this case, as noted above, the common law requirement that landlords provide premises that are "suitable for occupancy" is tantamount to the requirement that landlords provide premises that are "fit and habitable." *See Black's Law Dictionary* 711 (6th ed. 1990) (defining "habitable" as a residence that is "suitable for habitation").

4. If the premises were within the coverage of the Act, "any rental management company, rental agency, or any other person having the actual or apparent authority of an agent" would have the same liability as the landlord or owner of the premises. N.C.G.S. § 42-40(3).

the Ingrams is not included in the record, there is evidence raising a genuine issue of fact as to the extent of Emerald Isle's duty to maintain and repair the Ingrams' vacation home. Accordingly, summary judgment for Emerald Isle must also be reversed. *See Lowe v. Bradford*, 305 N.C. 366, 369, 289 S.E.2d 363, 366 (1982) (summary judgment not proper if genuine issue of material fact exists).

III

**[3]** In so holding, we reject the argument of the defendants that there is some distinction between their duty to William and Janet Conley and the remainder of the Conley family. The basis for the defendants' argument is that the vacation home was leased only to William and Janet Conley and thus there was no landlord-tenant relationship with the remainder of the Conley family. It follows, the defendants contend, that the members of the Conley family were licensees and that "absent some active negligence" on the part of the defendants, their recourse is against William and Janet Conley. We disagree. The tort liability arising from a breach of warranty of suitability or habitability protects not only the tenant(s), but also protects "someone on the premises with the tenant's permission." 5 *Thompson on Real Property* § 40.24(b)(9); *cf. Hockaday v. Morse*, 57 N.C. App. 109, 111-112, 290 S.E.2d 763, 765-66 (registered hotel guests and their guests are invitees), *disc. review denied*, 306 N.C. 384, 294 S.E.2d 209 (1982). In this case, the remainder of the Conley family was staying at the Ingrams' vacation home with the permission of William and Janet Conley, the tenants, and thus are entitled to the protection of the implied warranty of suitability. Indeed, the vacation home was advertised as housing up to fifteen persons, and to restrict the defendants' tort liability to injuries sustained by William and Janet Conley would be inconsistent with that advertisement.

Reversed and remanded.

Judges MARTIN, Mark D. and TIMMONS-GOODSON concur.